# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 3:18-CR-00086-03** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **OLUDAYO FOLARIN OLAYINKA (3)** | **MAG. JUDGE KAREN L. HAYES** |

## MEMORANDUM RULING

Pending before the Court is Defendant Oludayo Folarin Olayinka's ("Olayinka") Appeal of the Magistrate Judge's Ruling denying his request to retain H. Cameron Murray as his counsel in this matter. [Doc. No. 156]. The Government has filed a Response [Doc. No. 174]. The issue is ripe.

## I.
## Facts and Procedural History

Olayinka has been charged with Criminal Conspiracy, in violation of Title 18 U.S.C. §371; False Statements in Connection with Immigration Documents, in violation of Title 18 U.S.C. §1546(a); Mail Fraud, in violation of Title 18 U.S.C. §1341; and Aggravated Identity Theft, in violation of Title 18 U.S.C. §1028A. Olayinka appeared for arraignment before the Magistrate Judge on June 7, 2018. At the arraignment, Olayinka advised the Magistrate Judge he desired to retain Mr. H. Cameron Murray to represent him in this matter. Mr. Murray had previously been retained to represent Talatu Dada, Precillia Dada and Tiimaro Ekanem, three of Olayinka's co-defendants. The Government contends that Tiimaro Ekanem conspired with co-defendants John Egunjobi and others to arrange marriages for the purposes of evading immigration laws and obtaining benefits to which they are not otherwise entitled. The Government further contends that

Defendants Olayinka, Talatu Dada, Precillia Dada, and other co-defendants engaged in criminal conspiracy, mail fraud, identity theft, and submitting fraudulent documents to the United States Citizen and Immigration Services.

The Magistrate Judge conducted a hearing as required by *United States v. Garcia,* 517 F.2d 272 (5th Cir. 1975), in order to address with Olayinka the propriety of the proposed joint representation. Olayinka indicated that he was fully aware of the potential conflicts which could arise in the proposed joint representation, and that he desired to waive those conflicts and be represented by Mr. Murray. Even so, the Magistrate Judge concluded that the waiver was not in the best interest of Olayinka and denied his request to be represented by Mr. Murray. The Magistrate Judge also indicated her concern that two years down the road Olayinka would be filing an ineffective assistance of counsel claim and a motion under 28 U.S.C. §2255. Through his court-appointed Public Defender, Olayinka has appealed the Magistrate Judge's decision.

## II.

### Standard of Review

A district court may reconsider a magistrate judge's disqualification order where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. §636(b)(1)(A); FED. R. CRIM. PROC. 59(a). The district court is "allowed substantial latitude in refusing waivers of conflicts of interest" for an actual conflict of interest or a serious potential conflict that may arise during trial. *Wheat v. United States*, 486 U.S. 153, 163 (1988).

## III.

### Law and Analysis

As the Fifth Circuit stated in *United States v. Gharbi,* 510 F.3d 550 (5th Circuit 2007),

> "The Sixth Amendment to the Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to

> have the Assistance of Counsel for his defence.' U.S. CONST. amend
> VI; *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66
> L.Ed.2d 564 (1981). Part of this guarantee is a criminal defendant's
> right to retain the attorney of his choice. *Powell v. Alabama,* 287 U.S.
> 45,53, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The right to counsel of choice,
> however, is not absolute. Rather, 'the essential aim of the [Sixth]
> Amendment is to guarantee an effective advocate for each criminal
> defendant rather than to ensure that a defendant will inexorably be
> represented by the lawyer whom he prefers.' *See Wheat v. United
> States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).
> Thus, there is a presumption in favor of a defendant's counsel of choice,
> but that presumption may be overcome by an actual conflict of interest,
> or by a showing of a serious potential for conflict. *Id.* at 164, 108 S.Ct.
> 1692. This is true even when a defendant expresses a desire to waive
> the potential conflict. *Id.*; *United States v. Sotelo,* 97 F.3d 782, 791
> (5th Cir.1996).
>
> A valid waiver does not end the inquiry because the district court has an
> 'independent interest in ensuring that criminal trials are conducted within
> the ethical standards of the profession and that legal proceedings appear
> fair to all who observe them.' *Wheat,* 486 U.S. at 160, 108 S.Ct. 1692.
> If a court justifiably finds an actual conflict of interest, 'there can be no
> Doubt that it may decline a proffer of waiver.' *Id.* at 162, 108 S.Ct. 1692.
> Because 'the likelihood and dimensions of nascent conflicts of interest
> are notoriously hard to predict,' we afford the district court substantial
> latitude in refusing a waiver where a potential conflict may or may not
> develop into an actual conflict at trial. *Id.* at 162-63, 108 S.Ct. 1692. We
> will not reverse a district court's disqualification of counsel for conflict
> unless the defendant can show the district court abused its substantial
> discretion in this area. *Sotelo,* 97 F.3d at 791."

*at* p. 553.

While permitting a single attorney to represent co-defendants is not per se violative of constitutional guarantees of effective assistance of counsel, joint representation is inherently suspect because of what it tends to prevent the attorney from doing. *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978); *see Cuyler v. Sullivan*, 446 U.S. at 335, 348 (noting that [A] possible conflict [of interest] inheres in almost every instance of multiple representation). Furthermore, the Sixth Amendment right to counsel includes a right to representation "free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271 (1981).

3

A defendant may waive his Sixth Amendment rights if the waiver is given voluntarily, knowingly and intelligently. *United States v. Garcia*, 517 F.2d 262 (5th Cir. 1975). But the Court has "substantial latitude" to reject a waiver. *Wheat*, 486 U.S. at 163. The latitude accorded the Court is so great - and the harm of proceeding to trial with a conflicted attorney so severe - that it may reject a waiver both in the case of an actual conflict or where there is a serious potential for conflict, in recognition of the murk[y] pre-trial context when relationships between parties are seen through a glass, darkly. *Wheat*, 486 U.S. at 163. As the *Wheat* court noted:

> "The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them."

*Id.* at p. 162-63. Thus, although defense counsels have stated that they do not currently anticipate any conflicts of interest, a conflict could arise at any time in the period leading up to trial. Representation of four defendants severely reduces a defense attorney's ability to respond efficiently and appropriately to unanticipated changes in the case.

The potential for unforeseen conflict is even greater in conspiracy cases. In such cases, "where the liberal rules of evidence and the wide latitude accorded the prosecution may . . . operate unfairly against an individual defendant, it is especially important that he be given the benefit of

the undivided assistance of his counsel..." *see Wheat*, 486 U.S. at 163-64 (rejecting waiver of three co-conspirators of varying stature in a complex drug distribution scheme).

Every phase of this proceeding is laden with a substantial risk of conflict. Joint representation in this case threatens each defendant's "right to a defense conducted by an attorney who is free of conflicts of interest." *Wheat*, 486 U.S. at 157.

Although no direct conflict of interest has been identified, the Government identified several situations in which a conflict may arise while an attorney is representing multiple defendants. First, joint representation immediately and necessarily forecloses a host of trial defenses. To avoid a conflict for their attorney, the defendants would be barred from making any conflicting claims of relative responsibility. The emphasis at trial of one defendant's culpability in order to lessen the culpability of the other jointly represented defendant(s) constitutes a conflict of interest that may qualify as ineffective assistance of counsel. *See United States ex rel. Taylor v. Rundle*, 305 F. Supp. 1036, 1039 (E.D. Pa. 1969). Similarly, because of the obvious conflict, none of the defendants could take the position that he/she was not a member of the conspiracy, but the other defendants were members. Nor could they argue that there was no conspiracy because one co-defendant conducted the structured transactions without knowing assistance from any or all of the other co-defendants. *See McFarland v. Yukins*, 356 F.3d 688, 709 (6th Cir. 2004) (finding a Sixth Amendment violation because of conflict of interest where defendant's counsel chose "to forego an obvious and strong defense to avoid inculpating another client" on trial for the same charges).

A related issue is that one co-defendant may feel pressured not to provide confidential

information to counsel, out of concern that it will be disclosed to another co-defendant. This inhibits counsel's role as advocate. *See* ABA Model Rule of Professional Responsibility 1.7, comment 31 (commenting on effect of joint representation on attorney's duty of confidentiality).

Second, joint representation would necessarily preclude one or all defendants from testifying at trial. If one defendant exercised his right to testify, counsel would be placed in the plainly untenable position of having to cross-examine the testifying defendant on behalf of the non-testifying one. By going forward with joint representation, the defendants must essentially commit not to testify immediately, without having heard any evidence at trial.

Third, joint representation may harm defense counsel's ability to advocate for his client's best interest in the plea bargaining stage. If one defendant's proposed plea agreement were to require him or her to cooperate with the prosecution, that plea bargain would be disadvantageous for any other defendant who chooses to proceed with the trial. Defense counsel would be torn between securing a favorable plea agreement for one defendant, while seeking a successful trial for the other defendant--mutually exclusive outcomes in this situation. *See, e.g. Holloway v. Arkansas*, 435 U.S. 475, 489-90 (1978) ("Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. . . in this case it may well have precluded defense counsel for [defendant] from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution."). Similarly, joint representation may restrict a defendant's right to trial. For example, a non-pleading co-defendant may feel compelled to accept a plea rather than face his co-defendant's bargained-for testimony at trial. When representing multiple clients, defense counsel also faces certain restrictions in making plea agreements.

Furthermore, if one or several of the defendants were to make a plea agreement that required him or her to testify against another defendant, defense counsel would be substantially restricted in its cross-examination of that witness. Counsel has a duty to maintain client confidentiality. This obligation may limit defense counsel's representation of other clients in the same matter, as counsel is precluded from using or disclosing one client's confidential information, even if it were advantageous to another client. If one client were to testify for the government, counsel's obligation to protect the testifying client's attorney-client privilege would restrict counsel's ability to thoroughly cross-examine the witness, thereby potentially harming the defendant's case. As a result, counsel has a disincentive to engage in plea negotiations for any of the clients – regardless of how favorable the terms – with the knowledge that counsel cannot be put in the position of having to cross-examine a cooperating client. *See United States v. Dempsey*, 724 F.Supp 573, 578 (N.D. Ill. 1989) (multiple lawyers in a single law firm could not represent co-defendants in a securities fraud case notwithstanding co-defendants waivers of their right to conflict free representation).

Fourth, if the United States prevails at trial, joint representation also prevents counsel from arguing differences of culpability at the sentencing phase, which would give rise to an actual conflict of interest. The cumulative result of joint representation is that it compels the defendants immediately to make a series of important strategic decisions from which they cannot deviate. Counsel can only affirmatively represent that no conflict of interest exists based on the facts as they know them now and their currently anticipated defenses. But given the fluid nature of criminal investigations and trial, they cannot anticipate a change in circumstances which might place their clients' interests at loggerheads. *Wheat*, 486 U.S. at 163. Joint representation renders counsel powerless to adapt to a change in circumstances. This lack of flexibility

demonstrates the serious risk of potential conflict contemplated in *Wheat* and weighs against accepting the defendants' waivers.

Finally, payment of lawyer's fees where defendants are jointly represented can also create a conflict of interest. If it is the case that one defendant is paying for all parties' representation, there may be further conflicts of interest. Joint representation in such a situation may create adverse incentives for defense attorneys if they feel beholden to the payer of the fees instead of the defendant. Defense attorneys may have an interest to protect the payer, potentially causing the attorney to refrain from fairly representing the other defendants at trial or during pretrial plea negotiations. *See Quintero v. United States*, 33 F.3d 1133 (9th Cir.1994) (holding that evidentiary hearing on conflict of interest claim was warranted where counsel's advice to reject a favorable plea agreement could have been motivated by a desire to keep that defendant from implicating the third-party payer of attorney's fees).

The Supreme Court has recognized that a district court's decision to reject a waiver of a conflict must be given substantial deference because the district court must make the decision before trial and without the benefit of hindsight. Unfortunately, a district court must rule on the issue of whether to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place occurred, but in the murkier pre-trial context. As Chief Justice Rehnquist warned "the likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." *Wheat,* 486 U.S. at 162-63.

The myriad of unworkable issues the potential conflicts in this case clearly supports the Magistrate Judge's ruling here and exemplifies why the Supreme Court has given this discretion

to the trial courts to ensure the "fair, efficient and orderly administration of justice." *See Wheat* at 163.

## IV.

## Conclusion

The more defendants an attorney represents, the more likely a conflict will arise. Mr. Murray already represents three (3) defendants in an Indictment charging 17 defendants with conspiracy. Although each defendant is also charged with individual charges, the likelihood of a potential conflict outweighs Olayinka's right to have Mr. Mr. Murray represent him in this proceeding.

Therefore, the Court finds that the Magistrate Judge's ruling was not clearly erroneous, based upon the facts in this case, or contrary to the relevant case law governing conflicts of interest. Accordingly, Olayinka's Appeal of the Magistrate Judge's Ruling denying his request to retain H. Cameron Murray as his counsel in this matter [Doc. No. 156] is DENIED.

Monroe, Louisiana, this 5th day of July, 2018.

                                              **TERRY A. DOUGHTY**
                                              **UNITED STATES DISTRICT JUDGE**